GEORGE W. BREITSAMETER (ISB 2871)
MORROW & FISCHER
332 North Broadmore Way, Suite 102
Nampa, ID 83687
Telephone:  (208) 475-2200
Facsimile:  (208) 475-2201
gbreitsameter@morrowfischer.com

JOHN JOSEPH CONWAY (MI 56659) *(pro hac vice pending)*
JOHN J. CONWAY, P.C.
26622 Woodward Avenue, Suite 225
Royal Oak, MI 48067
Telephone:  (313) 961-6525
Facsimile:  (248) 545-1839

ATTORNEYS FOR PLAINTIFF

### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMBER LANGEMO,<br><br>    Plaintiff,<br><br>    v.<br><br>BLUE CROSS OF IDAHO HEALTH SERVICE, INC., an Idaho insurance corporation, and J.R. SIMPLOT COMPANY GROUP HEALTH & WELFARE PLAN, an employee welfare benefit plan,<br><br>    Defendants. | Case No.: _____<br><br>**PLAINTIFF'S COMPLAINT FOR ENFORCEMENT OF HER RIGHT TO EMPLOYEE WELFARE BENEFITS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 ("ERISA")** |

PLAINTIFF AMBER LANGEMO, by her attorneys, GEORGE W. BREITSAMETER of

MORROW & FISCHER, PLLC and JOHN JOSEPH CONWAY of JOHN J. CONWAY, P.C.,

and for her Complaint against the DEFENDANT BLUE CROSS OF IDAHO HEALTH

SERVICE, INC. and J.R. SIMPLOT COMPANY GROUP HEALTH & WELFARE PLAN, states

as follows:

## NATURE OF THE ACTION AND JURISDICTION

1.      This is a civil action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") Section 502, 29 U.S.C. § 1132(a)(1)(B) regarding the breach of the terms of an employee welfare benefit plan and for the purpose of compelling the Defendants to provide coverage for certain medical benefits in the amounts and at the coverage levels promised, and for an accounting, recovery of costs, and attorney fees incurred as a consequence of the Defendants' failure to do so.

2.      This Court has jurisdiction pursuant to ERISA Section 502(e)(1), (f), 29 U.S.C. § 1132(e)(1), (f), and 28 U.S.C. § 2201(a), and Plaintiff has exhausted all administrative remedies required of her or, alternatively, exhaustion is futile.  Additionally, Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201(a).

3.      Venue is proper in this District pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2) since Defendants' breaches took place in this jurisdiction; Defendants conduct and transact business in this jurisdiction; and Plaintiff's coverage is administered in this jurisdiction.

## THE PARTIES

4.      Plaintiff Amber Langemo ("Plaintiff") was, at all relevant times, a "participant" within the meaning of ERISA Section 3(7), 29 U.S.C. § 1002(7), in the J.R. Simplot Company Group Health & Welfare Plan ("the Plan,")  an employee welfare benefit plan, by virtue of her employment with Albertsons, LLC ("Albertsons.") Plaintiff resides in Grand Forks County, North Dakota.  Plaintiff's participation in an ERISA-qualified health plan purports to provide her with full medical coverage.

5.      Defendant Blue Cross of Idaho Health Service, Inc. ("BCI") is an Idaho insurance corporation.  BCI is and has been an employee welfare benefit insurer and fiduciary and acts as a

fiduciary and the claims administrator of the medical portion of the Plan, and in determining the coverage level and payment rate for Plaintiff, for certain non-contracted emergency medical transportation health insurance benefits during the periods for which this claim for benefits accrued. Defendant BCI is and has been, at all relevant times, operating within this District.

6. Under the terms of the Plan at issue, Defendant BCI was granted the discretion to administer the Plan so that it acts as the Plan administrator within the meaning of ERISA Section 3(16), 29 U.S.C. § 1002(16)(A)(i).

7. All documents referenced in this Complaint are in the possession of Defendant BCI.

**GENERAL ALLEGATIONS**

8. Plaintiff realleges all preceding paragraphs.

9. Plaintiff is enrolled in an ERISA-qualified healthcare plan administered by Defendant BCI.

10. One of the healthcare benefits provided under the terms of the Defendant BCI's healthcare coverage is for the payment for medical transport and/or emergency medical transportation services for plan participants.

11. On or about April 25, 2014, Plaintiff, 34 weeks pregnant and experiencing labor contractions, was admitted to Altru Health System in Grand Forks, North Dakota.

12. With concerns of impending delivery of a premature infant, previous concerns of a possible diagnosis of spinal bifida, and possible resultant medical complications, Plaintiff's attending emergency medical provider determined Plaintiff required care and possible neonatal surgery at a tertiary care center.

13. Local medical facilities in and around Grand Forks, North Dakota were unable to adequately treat Plaintiff's serious condition and were ill-equipped to address his medical needs.

14. Plaintiff's attending physician determined that Plaintiff required intensive care services not available at Altru Health System or at any other local medical facility in Grand Forks.

15. Accordingly, Plaintiff's attending physician decided that Plaintiff should be medically transported from Altru Health System in Grand Forks, North Dakota by air ambulance service to Abbott Northwestern Hospital in Minneapolis, Minnesota, the closest medical facility with the intensive, tertiary care services Plaintiff required.

16. A medical transport aircraft was summoned from Valley Med Flight, Inc. which was dispatched and responded to the request to medivac Plaintiff to Abbott Northwestern Hospital.

17. Plaintiff was safely transported to, and treated, at that facility.

18. Upon discharge, Plaintiff began receiving Explanation of Benefit statements ("EOBs") detailing the approved amounts for the medical transport flights.

19. Defendant BCI's EOBs revealed that Defendant was providing only a fraction of the transportation cost and leaving Plaintiff owing a significant unpaid balance.

20. Defendant BCI claimed that Plaintiff was responsible for the unpaid amounts under a provision of its contract which limited reimbursements for non-participating providers.

21. To the best of her ability, Plaintiff and her authorized representatives challenged the "Adverse Benefit Determination," which left her with a balance due of approximately $46,357.87.

22. Despite appeals concerning the underpayment, Defendant BCI refused to pay the proper amount for the emergency services and impermissibly shifted the risk under its health contract to Plaintiff, so that she was left owing approximately 79% of the provider's charges.

23. Defendant BCI was effectively covering only about 21% of the charges and leaving the balance payable by the patient or the patient's family.

24.     In fact, Defendant BCI underpaid the claim by artificially lowering its reimbursement rate for the emergency medical transport services and compensating at a rate which was far below industry standards and significantly deviated from the Usual, Customary and Reasonable Rate ("UCR") reimbursement levels required for such emergency medical transportation.

25.     Defendant's own internal healthcare coverage documents indicate that the cost of an emergency medical transport will be paid by the Defendant, irrespective of whether the air ambulance provider is in-network or out-of-network.

26.     Furthermore, the Plan specifies that, for services provided by an Out-of-Network Provider, "the Plan's payment percentage will be based on the Maximum Allowance determined by Blue Cross of Idaho."

27.     Rather than process Plaintiff's claim in accordance with the terms of the Plan, Defendant BCI instead adopted Blue Cross Blue Shield of North Dakota's ("BCBSND") payment rate, in accordance with BCBSND's own fee schedule.

28.     In correspondence with Plaintiff, Defendant BCI has even stated that it "does not calculate the maximum allowance on out-of-state claims such as this."

29.     This is in direct contradiction to the terms of Plaintiff's Plan.

30.     Defendant BCI has used an arbitrary and unreasonable reimbursement figure which is not based on substantial evidence, nor compliant with federal guidelines for emergency air transportation services.

31.     In the face of this, and other compelling evidence regarding the proper reimbursement, Defendant BCI has ceased providing the proper and mandated coverage levels

under Plaintiff's Plan and has denied all claims for complete reimbursement, leaving Plaintiff personally liable for the deficiency.

32.     Defendant BCI's denials of coverage have been made pursuant to delegated claims administration responsibilities.

33.     Defendant BCI is responsible for determining the reasonable reimbursement rates which must comport with the fair rate of the service and UCR rates.

34.     Plaintiff has internally appealed the Defendant BCI's reimbursement decision, and Defendant BCI upheld its determination and/or refused to allow Plaintiff to exhaust the internal administrative review process.

35.     According to its own Plan coverage documents and protocols, Defendant BCI is not providing coverage in the correct and proper amounts under its contracts.

36.     This direct misreading and misapplication of the terms of the Plan has occurred while Defendant BCI is acting as a "fiduciary," as that term is defined by ERISA, as it is responsible for determining the eligibility of participants and beneficiaries for benefits under the Plan, under 29 U.S.C. § 1002(21)(A).

37.     Defendant BCI's misapplication of the Plan terms and adoption of another insurance company's fee schedule also appears to be part of continued conduct on behalf of Defendant BCI through which it has established and implemented a policy to underpay claims for air ambulance transport, even though the terms of its own Plan documents provide payment methodologies which would otherwise favor ERISA plan participants.

38.     Defendant BCI's refusal to provide proper coverage for emergency air ambulance transportation services under the Plan is based on a fundamentally unfair application of the Plan's own payment guidelines.

39.     Defendant BCI's biased application of the Plan's payment guidelines results in a significant portion of the cost of emergency healthcare being shifted back onto the ERISA participants and their beneficiaries for using non-contracted providers.

40.     Defendant BCI's actions also constitute a violation of those fiduciary duties owed to the Plaintiff to fairly construe and interpret the Plan's language with the "exclusive purpose of providing benefits to participants and beneficiaries," as is required of claims administrators, insurers, and fiduciaries under ERISA Section 404, 29 U.S.C. § 1104(a)(1)(A).

41.     Furthermore, Defendant BCI must comply with the reimbursement rates as set forth under the Patient Protection and Affordable Care Act, P.L. 111-148 (2010), which defines UCR reimbursement rates for medical providers, including non-participating providers of air medical transport services.

42.     Plaintiff has exhausted all administrative remedies, and/or exhaustion is futile, and Defendant BCI has denied Plaintiff's ERISA appeal under controlling regulations, and he may now seek judicial review.

43.     Plaintiff supplied Defendant BCI with adequate and substantial proof of loss.

44.     Under the terms of the plan language at issue, Plaintiff is entitled to the immediate payment of all billed charges and/or to compel Defendant BCI to provide coverage in accordance with the proper coverage levels.

45.     Upon information and belief, the monetary value of Plaintiff's claim played a significant role in the wrongful actions of Defendant BCI and its agents.

46.     Defendant BCI's handling of both the claim and appeal process has resulted in a clear abuse of discretion and has violated every right permitted to participants, like Plaintiff, under ERISA to have a full and fair review of their claims by appropriate fiduciaries who interpret plan

provisions for the "exclusive benefit of Plan participants" as is required by ERISA under ERISA Section 503, 29 U.S.C. § 1133.

47.     Plan beneficiaries, like Plaintiff, have the legal right to seek payment directly from their plan's insurer for the underpayment of claims for medical services provided to them by non-network health care providers.

48.     The refusal to make such payment allows for the right to bring suit for such benefits under ERISA.

49.     Defendant BCI, a fiduciary, has improperly shifted the financial responsibility for this claim to the plan participant when it had agreed to provide full coverage and ensure the medical care sought.

## I.     OVERVIEW OF COVERAGE FOR EMERGENCY AIR AMBULANCE TRANSPORTATION SERVICES

### A.     Medically Necessary Emergency Air Ambulance Services

50.     A significant segment of the American population resides in areas that may be described as rural or remote local communities.

51.     In certain cases, when an individual's health needs or prescribed medical care cannot be properly addressed locally, a person residing in (or located in) a rural market must be transported by air ambulance to a medical facility able to adequately manage the person's healthcare.

52.     A patient is transported either from the scene of an accident or through an inter-facility transport.

53.     For cases involving inter-facility transports, a patient's attending physician is responsible for making the determination to relocate a patient and for selecting the safest medically necessary form of transportation.

54.     Often, these decisions are made on a life or death basis, and the urgency of the patient's medical condition necessitates the prompt and safe transport from a local medical facility to a major medical center equipped with the type of life saving equipment and specialists to adequately address the patient's symptoms.

55.     To safely transport a patient between two facilities requires a properly equipped advanced life support medical transport aircraft and a team consisting of trained pilots, emergency medical technicians, and emergency nursing professionals.

56.     The costs to properly equip each individual fixed-wing aircraft for air medical transportation services alone can run into the millions of dollars.

57.     The cost of having an emergency medical transport team on site and ready to act immediately can reach millions of dollars annually as well.

58.     The average price of an emergency air medical flight is $40,000, according to private and governmental data compilations and industry studies.

59.     The price is reflective of the actual operating costs of having a fleet of such emergency medical transportation aircraft at the ready, twenty-four hours per day, seven-days per week.

60.     The price also reflects the reality that air ambulance providers are not self-dispatching and operate on a reimbursement model based upon a payor-mix consisting of private health insurance coverage, government health coverage programs and self-insureds. This means that air ambulance providers do not receive payments that cover their fixed and variable costs for a majority of their transports.  This is true for nearly all self-insured, Medicare and Medicaid transports, a segment which constitutes over half of all transports in the industry. The price charged reflects this cross subsidization and is necessary for private air ambulance companies to continue

to provide lifesaving services in the areas that need it most.

**B.     BCI'S "Maximum Allowance" Payment
Methodology for Emergency Ambulance Services**

61.     As a private insurer offering healthcare coverage to the Plan, Defendant BCI represented to affected ERISA plan participants, like Plaintiff, that it would provide payment for "Ambulance Services" at a level of 80% of the "Maximum Allowance."

62.     The "Maximum Allowance" is a universal term that appears in Defendant BCI's plan language delivered to the Plan, and, by extension, to Plaintiff, and purports to contain a series of payment methodologies.

63.     Under Defendant BCI's "Maximum Allowance" coverage provisions, Defendant represents that it will determine payment for non-contracted medical providers in eight different ways.

64.     Of the payment calculation methods listed in Defendant BCI's Plan, the five applicable, or arguably applicable, to calculating the "Maximum Allowance" for an emergency air ambulance transportation are as follows:

"Amount paid for Services determined using factors such as"

> (1)     "[P]re-negotiated payment amounts,"
>
> (2)     "[T]he provider's charges,"
>
> (3)     "[T]he charges of providers with similar training and experience within a particular geographic area,"
>
> (4)     "Medicare reimbursement amounts,"
>
> (5)     "[T]he cost of rendering the Service."

65.     The only coverage restriction imposed by Defendant BCI for air ambulance service is that the service be medically necessary, and that transport be to the nearest facility equipped to

address the medical condition or to render a more cost-effective level of care.

66.     Under Defendant BCI's coverage language found in the Plan, which it administers and/or insures, BCI has promised that it will pay a percentage of the "Maximum Allowance."

67.     The "Maximum Allowance" term is standardized, generic, and used in the coverage documents delivered by Defendant BCI to the Plan and/or to Plaintiff.

68.     Given the coverage provisions, the cost-sharing obligations incurred by the participants and beneficiaries correlate to Defendant BCI's determination of the "Maximum Allowance."

69.     The "Maximum Allowance" provision's different methodologies can greatly affect (*i.e.*, decrease) the level of coverage that a participant or beneficiary enjoys under the Plan.

70.     In a separate, related matter, Defendant BCI has declared that the "usual, customary and reasonable amounts are the same amount BCBSND calculated and negotiated with its in-network providers."

71.     BCBSND's 2014 fee schedule, improperly adopted by BCI for payment of Plaintiff's claim, is based on a multiple of the Medicare fee schedule rates for air ambulance transportation.

72.     Through using a payment methodology based on a factor of Medicare and Medicaid, as opposed to rates reflecting the fair market, BCI significantly underpaid the Plaintiff's claim (and those of others, as indicated by the Appeal Denial letter).

73.     For example, were Defendant BCI to pay an actual Usual, Customary, and Reasonable fair market rate for air ambulance services, more data points than negotiated rates *by another insurance company* would be consulted, and an ERISA participant's cost-sharing obligations would be greatly reduced.

74.     It is also likely that the application of other listed "Maximum Allowance" payment calculation methods, including but not limited to "the provider's charges," would result in a higher reimbursement amount, thereby lowering an ERISA participant's cost-sharing obligations.

75.     While Defendant BCI's exact payment methodology has not been fully disclosed, it is clear BCI selected one of the least favorable potential payment rates, thereby greatly increasing the Plaintiff's cost-sharing obligations and liability for unpaid balances.

C.     **Defendant BCI'S Underpayment of Participants'**
       **Air Ambulance Claims**

76.     Defendant BCI underpays healthcare claims for emergency air ambulance services based upon a selective review of its applicable payment methodologies, always to the financial disadvantage of its members, like Plaintiff.

77.     Defendant BCI is denying claims for plan participants who are seriously ill or even impaired from an occupational standpoint because of their medical conditions and cannot physically or financially challenge the underpayment.

78.     By applying outmoded and outdated payment methodologies to the claims of its participants, Defendant BCI is wrongfully underpaying healthcare claims, as well as dissuading participants from seeking full payment for these claims against their Plans.

79.     Defendant BCI's refusal to provide certain healthcare benefits at the correct and proper payment levels impermissibly shifts the risk of emergency care to plan participants and leaves them facing financial hardship.

80.     Few participants are financially able to meet the full balance due and owing for a claim which is underpaid by Defendant BCI.

81.     Defendant BCI's wrongful refusal to provide coverage has caused financial damage to Plaintiff, who retains a substantial unpaid balance.

## II.   **DEFENDANT BCI'S VIOLATIONS OF ERISA**

82.     ERISA requires every employee benefit plan to provide for one or more named fiduciaries who will have the "authority to control and manage the operation and administration of the plan." ERISA Section 402, 29 U.S.C. § 1102(a)(1).

83.     The Plan delegates certain responsibilities for claims administration to Defendant.

84.     At all relevant times, Defendant was a "fiduciary" within the scope of ERISA through its exercise of discretionary authority, control, and responsibility over implementation and administration of the Plan.

85.     As a matter of internal policy, Defendant has wrongfully denied Plaintiff proper payment for emergency air ambulance transportation.

86.     Defendant has wrongfully underpaid healthcare coverage on a bad faith basis, despite overwhelming evidence showing, among other things, that the amounts it has elected to pay for emergency transportation services are vastly reduced from the proper contractual and fair market rates.

87.     Defendant is misconstruing the terms of the Plan to the disadvantage of Plaintiff.

88.     Defendant has failed to provide any explanation or evidence in support of its decision not to process payment for Plaintiff's claim in accordance with fair market or Usual, Customary, and Reasonable rates.

89.     Defendant's failure to provide evidence demonstrating that its interpretation is in the best interest of Plaintiff, a Plan beneficiary, constitutes a failure to provide full and fair review of the decision to deny benefits, in violation of ERISA Section 503, 29 U.S.C. § 1133(2).

90.     Further, Defendant BCI has orchestrated a policy to unduly hamper the processing of claims in violation of its fiduciary obligations in ERISA Section 404, 29 U.S.C. § 1104 and

ERISA Section 503, 29 U.S.C. § 1133, and those regulations promulgated by the Department of Labor at 29 C.F.R. § 2560.503-1. Specifically, Defendant:

     a.    Uses improper procedural denials to functionally bar further inquiry into underpaid claims, such as telling participants that the plan's terms dictate adoption of *another insurance company's* fee schedule;

     b.    Provides incorrect and invalid reasons for denying full coverage and issues misleading denials; and

     c.    Eliminates favorable evidence from consideration which contradicts Defendant's own internally-generated conclusions as to the proper level of payment.

91.    Defendant BCI has implemented these policies knowing full well that its participants are unable to fight the bureaucracy and are likely to simply drop their claims rather than exercise their full rights under ERISA.

92.    Moreover, Defendant BCI has excluded relevant pricing data applicable to air ambulance or emergency medical air transportation services from any meaningful consideration of Plaintiff's administrative appeals.

### III.    DEFENDANT'S VIOLATIONS OF THE AFFORDABLE CARE ACT AND THE PUBLIC HEALTH SERVICE ACT

93.    Moreover, Defendant BCI has excluded relevant pricing data applicable to air ambulance or emergency medical air transportation services from any meaningful consideration of Plaintiff's administrative appeals.

94.    As a plan fiduciary under ERISA, Defendant BCI is duty-bound to follow applicable federal healthcare laws and regulations in plan administration.

95.     The Patient Protection and Affordable Care Act ("PPACA"), 42 U.S.C. § 18001 *et seq.*, expanded the scope of the Public Health Service Act ("PHSA") to group health plans.

96.     Under 29 C.F.R. § 2590.715-2719A ("2719A"), a provision of the PHSA, if a group health plan offers "emergency room coverage," then the insurer "must cover emergency services," as that term is defined elsewhere in the regulation and under the Social Security Act, specifically in 42 U.S.C. § 1395dd.

97.     Under 42 U.S.C. § 1395dd, the term "emergency services" includes all emergency medical transportation decisions made by an attending emergency room physician at the hospital, and specifically provides for the transfer of an emergency room patient out of the hospital whose condition has not yet "stabilized."

98.     An attending emergency room physician may certify the transfer of a patient who is not yet "stabilized," and must also select the most appropriate method of transfer to another facility if it is deemed medically necessary.

99.     Through incorporating the definitions and protections of 42 U.S.C. § 1395dd concerning emergency services, Section 2719A necessarily encompasses emergency air medical transportation by moving an emergency patient between two facilities, *i.e.* transferring and receiving.

100.    The transportation also includes the dispensing of medically appropriate and necessary life support, while en route from facility to facility.

101.    To avoid exposing insureds to significant balance bill liability incurred because of an emergency beyond their control, federal regulations adopted under the PPACA set forth required payment methodologies for patients who receive emergency medical treatment from out-of-network emergency medical providers.

102.     The relevant PPACA regulations, codified under 45 C.F.R. § 147.138(b)(3), require that the payment rate for claims incurred using out-of-network medical providers, including air ambulance providers, must be calculated under a methodology known as the "greatest of three" payment guideline. Under this guideline, the rates paid for emergency medical services must be the highest of the following:

1.     The in-network provider negotiated rate;

2.     The amount arrived at by using the same method the plan generally uses to determine payments for out-of-network services, such as the usual, customary, and reasonable ("UCR") amount; or

3.     The amount that would be paid under Medicare. 45 C.F.R. § 147.138(b)(3)(i)(A)-(C).

103.     Defendant BCI has yet to provide any documentation as to how it arrived at its payment rate, yet it is more likely than not that under a "greatest of three" analysis, the greatest rate would be the Usual, Customary, and Reasonable rate paid to providers providing similar services under similar cost structures.

104.     Defendant BCI did not pay the Usual, Customary, and Reasonable rate for this transport.

**COUNT I**
**ACTION UNDER ERISA SECTION 502(a)(1)(B),**
**29 U.S.C. § 1132(a)(1)(B) TO RECOVER FULL EMPLOYEE BENEFITS**

105.     Plaintiff realleges all preceding paragraphs.

106.     Plaintiff is a participant in an employee welfare benefit plan which, among other things, specifically provides full medical coverage.

107.     Plaintiff was fully vested and entitled to full benefits thereunder.

108.     Plaintiff provided a medically necessary claim for reimbursement and/or coverage for her necessary medical treatment which Defendants have denied in whole or in part.

109.     Defendants have failed to properly interpret their own Plan such that Plaintiff has been found ineligible for the accurate reimbursement and/or coverage for certain medical benefits, despite meeting the Plan's eligibility requirements.

110.     Defendants' actions are incorrect, unreasonable, arbitrary, and not authorized under the controlling Plan documents or law.

111.     Plaintiff made attempts to redress this violation of his rights, by among other things:

      a.     Filing administrative appeals with the Plan;

      b.     Submitting written proof of loss for the proper payment of medical benefits; and

      c.     Following all internal procedures for the resolution of medical claim coverage.

112.     Defendants' actions violate well-settled ERISA case law concerning the proper administration of employee benefits.

113.     Defendants have abused their discretion by misinterpreting the terms of the Plan, artificially lowering the reimbursement rate of Plaintiff's medical coverage, leaving Plaintiff liable for medical charges that would otherwise be covered by the proper reimbursement rates, and by improperly shifting the risk of insurance coverage to an infirm participant in need of emergency medical treatment.

114.     Defendants' actions also violate its duty to review Plaintiff's claim for "the exclusive purpose of providing benefits to the plan participants," not for its own financial profit motivations.

115.     As a result of the foregoing, Plaintiff is entitled to the following:

a.   Full payment/reimbursement for all emergency medical transport benefits under the Plan and/or an order to pay the provider the balance due and owing to absolve Plaintiff of personal liability for the charges;

b.   Affirmative injunctive relief enforcing Plaintiff's rights under the plan by compelling Defendants to pay and/or reimburse Plaintiff for the correct level of coverage and/or an order to pay the provider the balance due and owing to absolve Plaintiff of personal liability for the charges.

116.   Finally, the State of Idaho has banned the use of discretionary clauses in health insurance contracts through Idaho Admin. Code 18.01.29.011:01 and, therefore, the standard of review applicable to this claim is *de novo*.

WHEREFORE, Plaintiff requests judgment and/or injunctive relief against Defendants adjudging that Plaintiff is entitled to full coverage for emergency medical transport benefits, all other damages, interest, attorney fees, and all other appropriate relief to which this Court deems just.

**COUNT II**
**ACTION AGAINST DEFENDANT BCI UNDER**
**ERISA SECTION 502(a)(3),**
**29 U.S.C. § 1132(a)(3) FOR EQUITABLE RELIEF**

117.   Plaintiff re-alleges all preceding paragraphs.

118.   Plaintiff has the right to "full and fair" review and proper notice of the reasons for the denial of her claimed benefits under ERISA Section 503, 29 U.S.C. § 1133, as well as applicable U.S. Department of Labor regulations and other regulatory protections.

119.   ERISA requires that Plaintiff be afforded a reasonable opportunity for a "full and fair" review of the decision denying her benefits.

120.   Plaintiff was denied her right to a full and fair review of her claim for benefits in one or more of the following ways:

a.   Defendant BCI has never issued a denial letter precisely explaining the relevant coverage provisions by which it is making its claims decision;

b.      Defendant BCI's internal claims reviewers refused to consider or credit any favorable documentation demonstrating the correct and proper reimbursement rate; and

c.      Defendant BCI repeatedly failed to abide by Department of Labor Regulations governing the administering of group healthcare claims by, among other things, creating internal obstacles to frustrate Plaintiff's ability to pursue her claim and unduly hampering the processing of claims.

121.    Plaintiff has the right to "full and fair" review and proper notice of the reasons for the denial of her claimed benefits under ERISA Section 503, 29 U.S.C. § 1133, as well as applicable U.S. Department of Labor regulations and other regulatory protections.

122.    Because ERISA requires Defendant BCI to discharge its fiduciary duties with respect to a plan solely in the interest of the participants and beneficiaries and with utmost, undivided loyalty to their interests, equitable relief is necessary, requiring, without limitation, the re-administration of the underpaid claim and the enjoining of the further use of artificially lowered reimbursement rates for participants requiring air medical transportation services.

123.    This relief includes, without limitation, the re-administration of the underpaid claim.

124.    Defendant BCI's actions as set forth above are in violation of the ERISA statute, its regulations, and Plan.

125.    Defendant BCI has denied coverage without providing beneficiaries and participants a full and fair review, in violation of those duties imposed by ERISA, and has administered the Plan in such a manner as to unduly obstruct the processing of valid claims.

126.     Defendant BCI is further denying Plaintiff an opportunity for a full and fair review by failing to provide evidence or an explanation for its determination that reimbursement rates are set by either Medicare or Medicaid.

127.     Because of Defendant BCI's breach of its duties as described above, Plaintiff has been harmed, continues to be harmed, and may be harmed in the future, by the acts or omissions detailed above.

WHEREFORE, Plaintiff requests equitable relief set forth above against Defendant BCI, including injunctive relief, plus costs, interest, and attorney fees, equitable disgorgement, declaratory relief, and any other relief to which Plaintiff is entitled.

**COUNT III**
**ACTION AGAINST DEFENDANT BCI UNDER**
**ERISA SECTIONS 502(a)(2) & (3), 29 U.S.C. §§ 1132(a)(2) & (3)**
**FOR BREACH OF FIDUCIARY DUTY**

128.     Plaintiff re-alleges all preceding paragraphs.

129.     Plaintiff is entitled to a fair and proper administration of her benefit plan by Defendant BCI, a fiduciary under the Plan and ERISA.

130.     Defendant BCI is operating under a financial conflict of interest with respect to Plaintiff which has impermissibly affected the handling of the underlying claim and Plaintiff's rights under 29 U.S.C. § 1133.

131.     Defendant BCI has breached its fiduciary duties to Plaintiff by knowingly underpaying her claim for emergency air ambulance transportation and having in place a claims structure that precluded consideration of other payment methodologies that were favorable to Plaintiff.

132.     Additionally, in underpaying the claim, Defendant BCI failed to take into account the patient balance billing protections set forth in the PPACA and PHSA.

133.    Plaintiff suffered harm as a result.

134.    Defendant BCI should be held liable for restitution, unjust enrichment, and surcharge as a result of breaching its duties to Plaintiff, through the actions alleged above.

WHEREFORE, Plaintiff requests full legal and equitable relief, appointment of an independent fiduciary, and surcharge against Defendant BCI plus costs, interest, and attorney fees, equitable disgorgement, declaratory relief, and any other relief to which Plaintiff is entitled.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests:

1.      An order compelling Defendants to pay Plaintiff forthwith the full amount of past due medical benefits of $58,950.00 for the emergency medical transport, minus any payments made, as set forth in the Plan, including interest on all unpaid benefits, or to enforce all rights under the Plan so as to absolve Plaintiff of personal liability for the charges;

2.      An accounting of all benefits paid to date, disclosure of Defendant BCI's protocols regarding those benefits, and all costs and fees associated with pursuing the accounting;

3.       An award of reasonable attorneys' fees and costs pursuant to ERISA Section 502(g)(1), 29 U.S.C. § 1132(g)(1) for having to bring this claim; and

4.      Any and all such other legal or equitable relief as may be just and appropriate.

Dated: September 24, 2019.

Respectfully submitted,

**MORROW & FISCHER, PLLC**

By:     /s/George W. Breitsameter

**JOHN J. CONWAY, P.C.**
John J. Conway
26622 Woodward Ave., Suite 225
Royal Oak, Michigan 48067