UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

----oo0oo----

AMBER LANGEMO,

              Plaintiff,

    v.

BLUE CROSS OF IDAHO HEALTH
SERVICE, INC., an Idaho
insurance corporation; and J.R.
SIMPLOT COMPANY
GROUP HEALTH & WELFARE PLAN, an
employee welfare benefit plan,

              Defendants.

No. 1:19-cv-370 WBS

MEMORANDUM AND ORDER RE:
DEFENDANTS' LIMITED MOTION
FOR SUMMARY JUDGMENT AND
RENEWED MOTION TO DISMISS

----oo0oo----

        Amber Langemo ("plaintiff") has brought this ERISA

action against Blue Cross of Idaho Health Service, Inc. ("Blue

Cross Idaho"), and J.R. Simplot Company Group Health & Welfare

Plan ("the Plan") (collectively "defendants").  The case concerns

plaintiff's attempts to recover from defendants for charges she

incurred when she was transported via air ambulance from Grand

1

Forks, North Dakota to Minneapolis, Minnesota.  The parties do not dispute that the transport was medically necessary, and it is undisputed that Blue Cross Idaho paid $12,592.13 to the provider, Valley Med Flight, Inc. ("Valley Flight").  However, plaintiff alleges that her claim was underpaid in violation of the terms of her employee welfare benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(b).  (Compl. (Docket No. 1).)  Presently before the court is defendants' limited motion for summary judgment,  ("Mot. for Summ. J.") (Docket No. 52.), and their renewed motion to dismiss ("Mot. to Dismiss") (Docket No. 46-4).

I. Factual and Procedural Background

Plaintiff was at all relevant times a participant in the J.R. Simplot Company Group Health & Welfare Plan ("the Plan").  (See Defs.' Statement of Undisputed Facts ("SUF") at ¶ 11 (Docket No. 52-3).)  The Plan is an employee welfare benefit plan under 29 U.S.C. § 1002 and claims for healthcare benefits thereunder are governed by ERISA.  (See id. at ¶ 1.)  The Plan is established, sponsored, and self-funded by the J.R. Simplot Company, and Blue Cross Idaho serves as the claims administrator. (See id. at ¶ 2.)

On April 25, 2014, plaintiff was 34 weeks pregnant and experiencing labor contractions when she was admitted to Altru Health System in Grand Forks, North Dakota.  (See Compl. at ¶ 11.)  Plaintiff's medical provider determined that she should be transferred to a tertiary care center due to concerns about premature delivery, a possible diagnosis of spina bifida in the infant, and potential medical difficulties.  (See id. at ¶ 12.)

Plaintiff's attending physician decided that that she should be medically transported by an air ambulance service, Valley Flight, to Northwestern Hospital in Minneapolis, Minnesota. (See Defs.' SUF at ¶¶ 8-9.)

Following its ambulance transport, Valley Flight submitted a claim to Blue Cross Idaho in the total billed amount of $58,900. (See id. at ¶ 10.) On May 19, 2014, Blue Cross Idaho sent an Explanation of Benefits ("EOB") to plaintiff which reported the processing and payment of the claim. (See id. at ¶ 13.) The EOB identified the health care provider, Valley Flight, the date the services were provided, the amount of the total billed charges ($58,950), the amount that Blue Cross Idaho paid ($12,592.13), and the difference between the amount billed and the amount paid ($46,357.87). (See id. at ¶ 14.) The remarks on the EOB indicated that the difference between the amount Valley Flight charged and the amount Blue Cross Idaho paid was because the "charge exceeds the allowable amount for the service" under the Plan. (See Defs.' SUF at ¶ 15.)

On July 28, 2014, Valley Flight's Insurance Collection Specialist sent a letter to Provider Appeals at Blue Cross Blue Shield North Dakota ("BCBS ND") demanding "additional payment for the charges incurred by [plaintiff]" in an effort to "resolve this without having to put a financial burden of $46,357 on the [plaintiff]." (See Decl. of Kelly Wise in Supp. of Mot. to Dismiss at Ex. C ("Wise Decl.") (Docket No. 46-2).) Valley Flight also wrote that "as a non-provider, the Member is responsible for any unpaid amounts." (See id.) Valley Flight did not state in this letter that it was writing on behalf of

plaintiff, and neither Valley Flight nor the plaintiff provided an "Appointment of Authorized Representative" form signed by plaintiff. (See id.)  On August 1, 2014, BCBS ND responded to Valley Flight that plaintiff was not a member of a plan administered by BCBS ND and that Valley Flight should "send [the claim] to the correct state." (See id. at Ex. D.)  On August 21, 2014, Valley Flight sent an identical letter to Provider Appeals at Blue Cross Idaho. (See id. at Ex. E.)

On September 12, 2014, Valley Flight sent a second demand to BCBS ND which was identical to the August 21, 2014 letter sent to Blue Cross Idaho. (See id. at Ex. F.)  On September 23, 2014, BCBS ND responded and stated that the claim had been reviewed by its reimbursement team and they had determined that the claim had been processed correctly "according to the current BCBS ND fee schedule." (See id. at Ex. G.)

On September 24, 2014, Blue Cross Idaho responded to Valley Flight's August 21, 2014 letter. (See id. at Ex. H.)  In the letter, Blue Cross Idaho said, "[a]fter careful review, it has been determined that this claim was processed correctly to apply the 'Maximum Allowance' for the services rendered" and that "[p]ricing for this service comes from your local Blue Cross Blue Shield plan to reflect your area UC." (Id.)  The letter acknowledged that plaintiff could be billed for the difference between Valley Flight's billed charges and the amount paid by Blue Cross Idaho and informed Valley Flight that it had no appeal rights as a non-contracting provider. (See id.)  Blue Cross Idaho instructed that "[a]ny appeals must be submitted by the member according to the terms of their member policy." (Id.)

4

1        On August 31, 2015, Valley Flight wrote to Blue Cross
2   Idaho, purporting to act on plaintiff's behalf and requesting
3   certain information.  (See id. at Ex. I.)  On September 9, 2015,
4   Blue Cross Idaho responded to plaintiff, and copied Valley Flight
5   on the letter.  (See id. at Ex. J.)  Blue Cross Idaho explained
6   that it was unable to review the appeal or provide documents
7   because "the 180 day time limit to file a formal appeal for this
8   claim expired on November 17, 2014" and that the claim was
9   therefore ineligible for review.  (See id.)

10       On January 20, 2017, plaintiff's counsel wrote to Blue
11  Cross Idaho and again attempted to assert an appeal on her
12  behalf.  (See id. at Ex. K.)  On February 3, 2017, Blue Cross
13  Idaho responded and stated that it was unable to review the
14  request for an appeal because "appeals must be submitted within
15  180 days after receiving notification of the Adverse Benefit
16  Determination" and "requests for appeal which do not comply with
17  the . . . requirements will not be considered." (See id. at Ex.
18  L.)  On September 19, 2019, plaintiff initiated the present
19  action for relief.  (See generally Compl.)

20       In the court's Order of October 14, 2020, the court
21  denied defendants' motion to dismiss on exhaustion grounds
22  without prejudice to the issue being raised on a limited motion
23  for summary judgment under Rule 56.  (See Docket No. 42 at 2.)
24  Defendants represented that the other grounds in their motion to
25  dismiss were so related to the motion to dismiss on exhaustion
26  grounds that they should be heard at the same time.  (See id.)
27  The court accordingly denied the motion to dismiss as to those
28  grounds without prejudice, (see id.), in order to consider those

1  arguments in a renewed motion to dismiss at the same time as the

2  limited motion for summary judgment.

3  II. Limited Motion for Summary Judgment[1]

4          Summary judgment is proper "if the movant shows that

5  there is no genuine dispute as to any material fact and the

6  movant is entitled to judgment as a matter of law." Fed. R. Civ.

7  P. 56(a).  The party moving for summary judgment bears the

8  initial burden of establishing the absence of a genuine issue of

9  material fact and can satisfy this burden by presenting evidence

10 that negates an essential element of the non-moving party's case.

11 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "Where

12 the record taken as a whole could not lead a rational trier of

13 fact to find for the non-moving party, there is no genuine issue

14 for trial."  Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.,

15 475 U.S. 574, 587 (1986).  Any inferences drawn from the

16 underlying facts must, however, be viewed in the light most

17 favorable to the party opposing the motion.  See id.

18

---

19     [1]    As a preliminary matter, both parties make evidentiary
20 objections.  Plaintiff argues that the statement in the Matthews
   Declaration that "remarks on the EOB" are "consistent with
21 remarks commonly used in the industry" lacks foundation and
   constitutes inadmissible hearsay."  (See Pl.'s Response to Defs.'
22 SUF, ¶ 15.) (Docket No. 56.);(See Decl. of Jeanna Matthews in
   Supp. of Mot. for Summ. J. at ¶ 10 ("Matthews Decl.") (Docket No.
23 52-2).)  Defendants object to Exhibit 2 of the Conway Declaration
   which consists of several pages from an unspecified website of
24 Air Ambulance Treatment Codes on the grounds that the exhibit
   lacks foundation, has not been authenticated and constitutes
25 inadmissible hearsay.  (See Defs.' Reply to Pl.'s Response to
   Defs.' SUF, ¶ 38.) (Docket No. 64.); (See Decl. of John J. Conway
26 in Opp'n to Mot. for Summ. J. at Ex. 2 ("Conway Decl.") (Docket
   No. 58).)  Because the court did not rely on the portions of
27 these documents that the parties object to, the court need not
   rule upon these evidentiary objections at this time.
28

1          In her first claim, plaintiff seeks to recover benefits
2   due to her under the terms of her Plan pursuant to ERISA Section
3   502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B).  (See Compl.
4   at ¶¶ 105-116.)  This provision allows a participant or
5   beneficiary "to recover benefits due to him under the terms of
6   his plan, to enforce his rights under the terms of the plan, or
7   clarify his rights to future benefits under the term of the
8   plan."  29 U.S.C. § 1132(a)(1)(B).  Defendants argue that they
9   are entitled to summary judgment because plaintiff did not comply
10  with her Plan's requirement that an internal appeal of an adverse
11  benefit determination must be submitted within 180 days, and that
12  she has therefore failed to exhaust her administrative remedies.
13  (See Mot. for Summ. J. at 18-19.)

14          Under Ninth Circuit precedent, the general rule
15  governing ERISA claims is that a claimant must avail herself of a
16  plan's own internal review procedures before bringing suit in
17  federal court.  See Diaz v. United Agr. Emp. Welfare Ben. Plan
18  and Trust, 50 F.3d 1478, 1483 (9th Cir. 1995).  The exhaustion
19  doctrine is consistent with ERISA's background, structure, and
20  legislative history and serves several important policy
21  considerations, "including the reduction of frivolous litigation,
22  the promotion of consistent treatment of claims . . . and a
23  proper reliance on administrative expertise."  See id.
24  Consequently, federal courts "have the authority to enforce the
25  exhaustion requirement in suits under ERISA" and "as a matter of
26  sound policy they should usually do so."  Amato v. Bernard, 618
27  F.2d 559 (9th Cir. 1980).

28          Here, the Plan stated that an internal appeal must be

1    made within 180 days after receipt of an adverse benefit

2    determination and that requests for appeal that fail to comply

3    with the Plan's requirements will not be considered.  (See

4    Matthews Decl. at Ex. G, p. 69.)  The Plan also said that in

5    order to designate an "Authorized Representative", a claimant

6    must "provide written authorization on a form provided by the

7    Plan and clearly indicate on the form the nature and extent of

8    the authorization."  (Id. at p. 101.)  The last day for plaintiff

9    to timely file an administrative appeal was November 17, 2014.

10   (See Wise Decl. at Ex. J.)

11          The letters sent to BCBS ND and Blue Cross Idaho by

12   Valley Flight prior to November 17, 2014 do not constitute an

13   appeal under the literal terms of plaintiff's Plan because Valley

14   Flight never said that it was acting on plaintiff's behalf or

15   provided a signed "Appointment of Authorized Representative"

16   form.[2]  Instead, Valley Flight declared that if it did not

17   receive payment from the insurance companies, it would seek

18   payment of the full amount due from plaintiff.  (See Wise Decl.

19   at Exs. C-F.)  The first letter that Valley Flight sent

20   _____

21          [2]    Plaintiff attempts to circumvent the Plan's requirement
     that an "Appointment of Authorized Representative" form signed by
22   the plaintiff was required for Valley Flight to pursue an appeal
     on her behalf by contending that her claims were "Urgent Care
23   Claims" in which a medical provider is permitted to act as a
     representative for a plan member without authorization.  (See
24   Pl.'s Opp'n to Mot. for Summ. J. at  15.) (Docket No. 55.)
     However, the Plan clearly states that an "Urgent Care Claim" is a
25   "pre-service claim" or "a claim that requires plan approval prior
     to obtaining medical care for the Claimant."  (See Matthews Decl.
26   at Ex. G, p. 110-11.)  The claim at issue here is a "post-service
     claim" or a "claim for a benefit under the Plan related to care
27   or treatment that the participant or beneficiary has already
     received."  (See id.)
28

purporting to act on plaintiff's behalf, albeit still without
providing a signed "Appointment of Authorized Representative"
form, was nearly a year after plaintiff's deadline to file an
administrative appeal. (See id. at Ex. I.)  In short, neither
plaintiff nor Valley Flight filed a timely appeal under the terms
of the Plan.

        Nevertheless, the Ninth Circuit has recognized
exceptions to the ERISA exhaustion requirement.  "[D]espite the
usual applicability of the exhaustion requirement, there are
occasions when a court is obliged to exercise its jurisdiction
and is guilty of an abuse of discretion if it does not, the most
familiar examples perhaps being when resort to the administrative
route is futile or the remedy inadequate."  Amato, 618 F.2d at
568.  Determining whether the exhaustion requirement is excused
is in the discretion of the court.  See Horan v. Kaiser Steel
Retirement Plan, 947 F.2d 1412, 1416 (9th Cir. 1991)(overruled on
other grounds).

        The futility exception to the exhaustion requirement
"is designed to avoid the need to pursue an administrative review
that is doomed to fail."  See Diaz, 50 F.3d at 1485-86.  The
"futility exception is narrow -- the plan participant must show
that it is certain that [her] claim will be denied on appeal, not
merely that [she] doubts that an appeal will result in a
different decision."  Almont Ambulatory Surgery Ctr., LLC. v.
UnitedHealth Grp., Inc., 99 F.Supp.3d 1110, 1179 (C.D. Cal.
2015).  "A plaintiff can demonstrate futility by pointing to a
similarly situated plaintiff who exhausted administrative
remedies to no avail, but bare assertions of futility are not

enough to invoke the futility exception." <u>Driscoll v. MetLife</u>
<u>Ins.</u>, Case No. 15-cv-1162-JLS (JMA), 2016 WL 11529805, * 10 (C.D.
Cal. May 2, 2016)(internal citations omitted).  "Where
individuals have not gone through the administrative process at
all, a Plan's refusal to pay does not, by itself, show futility."
<u>See</u> <u>Foster v. Blue Shield of California</u>, No. CV 05-03324 DDP
(SSx), 2009 WL 1586039, *5 (C.D. Cal. Jun. 3, 2009).  "On the
other hand, a history of unsuccessful correspondence and review
with the Plan can provide a sufficient showing of futility."  <u>See</u>
<u>id.</u>

Plaintiff persuasively argues that it would have been
futile for her to exhaust her administrative remedies given the
correspondence between Valley Flight and Blue Cross prior to the
November 17, 2014 deadline for filing an administrative appeal.
(<u>See</u> Pl.'s Opp'n to Mot. for Summ. J. at 22.)  Blue Cross Idaho
responded to Valley Flight on September 24, 2014 and stated that
"[a]fter careful review, it has been determined this claim was
processed correctly to apply the 'Maximum Allowance' for the
services rendered."  (<u>See</u> Wise Decl. at Ex. H.)  The letter said
that Blue Cross Idaho considered the inquiry closed and that "no
additional payment will be made" at this time.  (<u>See</u> <u>id.</u>)  BCBS
ND also responded to Valley Flight on September 23, 2014 and said
that "the requested claim was reviewed by our reimbursement team"
and "the claim did process correctly."  (<u>See</u> <u>id.</u> at Ex. G.)

Defendants argue that the correspondence between Valley
Flight and Blue Cross Idaho and BCBS ND cannot establish that an
appeal would have been futile because it was not clear that
Valley Flight was acting on plaintiff's behalf.  (<u>See</u> Defs.'

1    Reply in Supp. of Mot. for Summ. J. at 5.)(Docket No. 62.)   At

2    the hearing on this motion, defendants also contended that the

3    2017 letter sent by plaintiff's counsel to Blue Cross Idaho, (see

4    Wise Decl. at Ex. K), which complied with the Plan's appeal

5    requirements apart from being untimely, demonstrates that the

6    plaintiff did not truly believe that an administrative appeal

7    would be futile.

8            However, based on this history of correspondence, it is

9    inconceivable that plaintiff would have received a different

10   response from Blue Cross Idaho even if she had timely appealed

11   pursuant to the terms of the Plan.   Valley Flight was told by

12   both Blue Cross Idaho and BCBS ND that plaintiff's claim had been

13   processed correctly, that the "Maximum Allowance" had been paid,

14   and that no additional payment would be made.   (See Wise Decl. at

15   Exs. G-H.)   Moreover, Blue Cross Idaho has consistently

16   maintained throughout this litigation that "the EOB submitted to

17   [plaintiff] accurately reflects the processing of her claim" and

18   that "the maximum allowable amount under the Plan for the service

19   was paid in full."   (See Matthews Decl. at ¶ 7.)

20           In Horan v. Kaiser Steel Retirement Plan, the Ninth

21   Circuit held that it would be unnecessary to require the

22   plaintiffs to exhaust their administrative remedies because the

23   plan administrator filed an amicus brief during the course of

24   litigation in which it "unequivocally state[d] that the

25   plaintiffs [were] not entitled to [the benefits they sought]

26   under the plan."   See Horan, 947 F.2d at 1416.   The Horan court

27   concluded that such a position by the plan administrators allowed

28   the court to be "fully apprised of the administrator's expertise

                                    11

1   and its decision as to the merits of the plaintiff's claim."  Id.
2   This court agrees with the approach and reasoning laid out in
3   Horan and will follow it here.

4         After reviewing all the evidence in the record, the
5   court concludes that plaintiff has made a sufficient showing of
6   futility to excuse her failure to exhaust her administrative
7   remedies.  Defendants' limited motion for summary judgment will
8   therefore be denied.[3]

9   III. Renewed Motion to Dismiss

10        Federal Rule of Civil Procedure 12(b)(6) allows for
11  dismissal when the plaintiff's complaint fails to state a claim
12  upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).
13  The inquiry before the court is whether, accepting the
14  allegations in the complaint as true and drawing all reasonable
15  inferences in the plaintiff's favor, the complaint has stated "a
16  claim to relief that is plausible on its face."  Bell Atl. Corp.
17  v. Twombly, 550 U.S. 544, 570 (2007).  "The plausibility standard
18  is not akin to a 'probability requirement,' but it asks for more
19  than a sheer possibility that a defendant has acted unlawfully."
20  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare
21  recitals of the elements of a cause of action, supported by mere
22  conclusory statements, do not suffice."  Id.  Although legal

23

24        [3]   Because the court will deny summary judgment upon the
         foreground grounds, it  need not address plaintiff's arguments
25       that the Plan's language suggested that exhaustion of
         administrative appeals was not mandatory or that her claims
26       should be deemed exhausted because Blue Cross Idaho failed to
         establish or follow "reasonable claims procedures" consistent
27       with the requirements of ERISA pursuant to 29 C.F.R. § 2560.503-
         1(l).  (See Pl.'s Opp'n to Mot. for Summ. J. at 14–20.)
28
                               12

1    conclusions "can provide the framework of a complaint, they must
2    be supported by factual allegations." Id. at 679.

3        A.    Equitable Relief Under 29 U.S.C. § 1132(a)(3)

4            In her second claim, plaintiff seeks equitable relief
5    from Blue Cross Idaho under ERISA Section 502(a)(3), codified at
6    29 U.S.C. § 1132(a)(3).  (See Compl. at ¶¶ 117–27.)  Defendants
7    argue that plaintiff's claim for equitable relief under 29 U.S.C.
8    § 1132(a)(3) merely repackages her claim for benefits under 29
9    U.S.C. § 1132(a)(1)(B) and that she has therefore failed to
10   adequately state a claim for relief.  (See Mot. to Dismiss at 21–
11   23.)

12           29 U.S.C. § 1132(a) sets forth a comprehensive civil
13   enforcement scheme that Congress intended to be exclusive.  See
14   Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53–55 (1987).  29
15   U.S.C. § 1132(a)(3) permits a plan beneficiary to bring a civil
16   action to obtain appropriate equitable relief to redress such
17   violations or enforce any provisions or terms of the plan.  See
18   29 U.S.C. § 1132(a)(3).  This section is a "catchall" or "safety
19   net" designed to "offer [] appropriate equitable relief for
20   injuries caused by violations that [§ 1132] does not elsewhere
21   adequately remedy."  Varity Corp v. Howe, 516 U.S. 489, 512
22   (1996).  However, the Ninth Circuit has held that plaintiffs may
23   present claims under both 29 U.S.C. § 1132(a)(1)(b) and 29 U.S.C.
24   § 1132(a)(3) as alternative theories of liability so long as
25   there is no double recovery.  Moyle v. Liberty Mut. Ret. Ben.
26   Plan, 823 F.3d 948, 960–61 (9th Cir. 2016) (citing CIGNA Corp. v.
27   Amara, 563 U.S. 421 (2011).)  In other words, "[29 U.S.C. § 1132
28   (a)(1)(B)] and [29 U.S.C. § 1132(a)(3)] claims can proceed

                                    13

1    simultaneously if they plead distinct remedies."  <u>See</u> <u>id.</u> at 961;

2    <u>see</u> <u>also</u> <u>Atzin v. Anthem, Inc.</u>, 2:17-cv-06816-ODW (PLAx), 2018 WL

3    501543, *3 (C.D. Cal. Jan. 19, 2018).

4           Plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B)

5    requests "full payment/reimbursement for all emergency medical

6    transport benefits under the Plan" and "affirmative injunctive

7    relief enforcing plaintiff's rights under the plan by compelling

8    defendants to pay and/or reimburse plaintiff for the correct

9    level of coverage." (See Compl. at ¶ 115.)  Plaintiff's claim

10   under 29 U.S.C. § 1132(a)(3) requests the right to "full and

11   fair" review and proper notice of the reasons for the denial of

12   her claimed benefits under ERISA Section 503[4], 29 U.S.C. § 1133,

13   and any other applicable Department of Labor regulations, re-

14   administration of the underpaid claim, and the enjoining of the

15   further use of artificially lowered reimbursement rates for air

16   medical transportation services. (See Compl. at ¶¶ 119-127.)

17   Although some of plaintiff's requested relief under 29 U.S.C. §

18   1132(a)(3) may be duplicative, such as re-administration of the

19   underpaid claim, plaintiff also requests relief under 29 U.S.C. §

20   1132(a)(3) that plainly is not.

21           Moreover, defendants' argument is premature.  The case

22   law reflects the more appropriate timing for defendants' argument

23   -- the cases grappling with ERISA duplication do so at the

24   judgment or remedies phase, not the pleading phase.  See, <u>e.g.</u>

25

26       [4]   Defendants note that ERISA § 503 does not give rise to
     a private right of action for compensatory relief.  <u>See</u>
27   <u>Massachusetts Mut. Life. Ins. Co. v. Russell</u>, 473 U.S. 134, 144
     (1985).  However, plaintiff does not seek compensatory relief,
28   but rather equitable relief under 29 U.S.C. § 1132(a)(3).

                                    14

1  <u>Moyle</u>, 823 F.3d at 960–62; <u>Forsyth v. Humana, Inc.,</u> 114 F.3d
2  1467, 1475 (9th Cir. 1997)(holding plaintiffs could not recover
3  under §1132(a)(3) because they "[had] already won a judgment for
4  damages under section 1132(a)(1) for the injuries they suffered
5  as a result of the defendant's actions."). "It is hornbook law
6  that Rule 12(b)(6) tests the sufficiency of the pleaded claims,
7  not necessarily the availability of relief." <u>Rappa v. Mut. of</u>
8  <u>Omaha Ins. Company</u>, 2:16-cv-02984-KJM-CKD, 2017 WL 3394111, * 2
9  (E.D. Cal. Aug. 8, 2017). In sum, allowing plaintiff's ERISA
10 claims to proceed comports with <u>Amara</u>, the liberal federal
11 pleading standards, and with ERISA's purpose to protect the
12 interests of participants and beneficiaries. <u>See</u> <u>Varity</u>, 516
13 U.S. at 513 ("ERISA's basic purposes favor a reading. . . that
14 provides plaintiffs with a remedy.").

15      Viewing this motion in the light most favorable to the
16 plaintiff, the court is not prepared at this early stage of
17 litigation to determine whether or not recovery under 29 U.S.C. §
18 1132(a)(1)(b) alone would provide appropriate and adequate relief
19 for plaintiff. <u>See</u> <u>Seekatz v. Metro. Life. Ins. Co.</u>, Case No.
20 3:15-cv-00017-RRB, 2016 WL 5429647 *2 (D. Alaska Sep. 26, 2016)
21 (holding the same). In other words, it is too early to tell if
22 plaintiff's claim under 29 U.S.C. § 1132(a)(3) is effectively a
23 repackaged claim under 29 U.S.C. § 1132(a)(1)(b) or if the relief
24 available is truly duplicative. <u>See</u> <u>id.</u> Accordingly,
25 defendants' motion to dismiss plaintiff's second cause of action
26 is DENIED.

27      B.   <u>Breach of Fiduciary Duty</u>

28           In her third claim, plaintiff contends that Blue Cross

15

Idaho breached its fiduciary duty under Section 502(a)(2) and

502(a)(3), codified at 29 U.S.C. § 1132(a)(2) and § 1132(a)(3).

(See Compl. at ¶¶ 128-134.)  Blue Cross Idaho argues that

plaintiff cannot establish a breach of fiduciary duty because its

actions in processing her claim were not "fiduciary functions"

and therefore plaintiff has failed to adequately plead a claim

for relief.  (See Mot. to Dismiss at 20-21.)

               1.   29 U.S.C. § 1132(a)(2)

        The court agrees with defendants that plaintiff has not

adequately pled a claim for breach of fiduciary duty under 29

U.S.C. § 1132(a)(2) but for a distinct reason not briefed, or

apparently considered, by either party.  29 U.S.C. § 1132(a)(2)

permits participants, beneficiaries, or fiduciaries to bring a

civil action for appropriate relief under 29 U.S.C. § 1109.  29

U.S.C. § 1109(a) provides:

> Any person who is a fiduciary with respect to a
> plan who breaches any of the responsibilities,
> obligations, or duties imposed upon fiduciaries
> by this subchapter shall be personally liable to
> make good to such plan any losses to the plan
> resulting from each such breach and to restore to
> such plan any profits of such fiduciary which
> have been made through the use of the assets of
> the plan by the fiduciary, and shall be subject
> to such other equitable or remedial relief as the
> court may deem appropriate, including removal of
> such fiduciary.

29 U.S.C. § 1109(a).

        The fiduciary relationship is one with the plan as a

whole, and individual beneficiaries bringing a breach of

fiduciary duty claim must do so for the benefit of the plan --

not solely to recover for individual injuries.  See LaRue v.

DeWolff, Boberg & Assocs., Inc., 552 U.S. 284, 254 (2008) (29

U.S.C. § 1109 "does not provide remedies for individual injuries distinct from plan injuries"); Wise v. Verizon Commc'ns, Inc., 600 F.3d 1180, 1189 (9th Cir. 2010) ("The claim for fiduciary breach gives a remedy for injuries to the ERISA plan as a whole, but not for injuries suffered by individual participants.").  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege in the complaint that "the fiduciary injured the benefit plan or otherwise jeopardized the entire plan or put at risk plan assets."  See Wise, 600 F.3d at 1189.  Merely alleging that an ERISA breach of fiduciary duty claim "is brought on behalf of, and for the benefit of, the plan and all its participants" is not enough.  Id.

Plaintiff does not allege anywhere in her complaint that she brings her claim for breach of fiduciary duty on behalf of the Plan and all its participants.  Nor does she plead any specific facts that allege Blue Cross Idaho harmed the Plan or its participants other than herself.  Instead, she solely claims that Blue Cross Idaho has "breached its fiduciary duties to plaintiff by knowingly underpaying her claim" and that they were "operating under a financial conflict of interest with respect to Plaintiff."  (See Compl. at ¶¶ 130-131.)  In short, plaintiff does not allege any specific facts tending to show that any claim besides her own was mishandled or that the result of any such mishandling caused plan-wide injury.  Accordingly, plaintiff has failed to state a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2).

2.   29 U.S.C. § 1132(a)(3)

Plaintiff also seeks relief for breach of fiduciary

17

1   duty under ERISA § 502(a)(3), codified at 29 U.S.C. §1132(a)(3).

2   (See Compl. at ¶¶ 128-134.)  To state an equitable claim for

3   breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), the

4   plaintiff must establish that (1) the defendant was a plan

5   fiduciary, (2) the defendant breached [its] fiduciary duties, and

6   (3) the breached caused harm to the plaintiff."[5]  Wise v. MAXIMUS

7   Fed. Servs., Inc., 445 F. Supp. 3d 170, 196 (N.D. Cal. 2020).

8           Plaintiff has not alleged sufficient facts to

9   demonstrate that Blue Cross Idaho breached a fiduciary duty.

10  Plaintiff states that Blue Cross Idaho is "operating under a

11  financial conflict of interest with respect to plaintiff which

12  has impermissibly affected the handling of the underlying claim,"

13  (see Compl. at ¶ 130), but has pled no specific facts to show a

14  conflict of interests.  Nor has she alleged specific facts to

15  support her conclusory allegations that Blue Cross Idaho

16  "wrongfully underpaid healthcare coverage on a bad faith basis",

17  (see Compl. at ¶ 86), or that it "breached its fiduciary duties

18  to plaintiff by knowingly underpaying her claim." (See Compl. at

19  ¶ 130.)  Plaintiff does not even identify what specific fiduciary

20  duty, such as the duty of loyalty or the duty of care, Blue Cross

21  Idaho has allegedly breached.  Accordingly, plaintiff has failed

22  to state a claim for breach of fiduciary duty under 29 U.S.C. §

23  1132(a)(3).[6]

24  _____

25          [5]   There is no real dispute among the parties that
    plaintiff was harmed when she was left with an outstanding
26  medical bill of approximately $46,357.87.  (See Compl. at ¶ 21.)

27          [6]   Because the court finds that plaintiff has not
    adequately stated a claim that Blue Cross Idaho breached its
28  fiduciary duties when it administered her claim, the court need

                                    18

1    IT IS THEREFORE ORDERED that defendants' limited motion

2 for summary judgment (Docket No. 52) be, and the same hereby is,

3 DENIED.

4    IT IS FURTHER ORDERED that defendants' renewed motion

5 to dismiss, (Docket No. 46-4), be, and the same hereby is, DENIED

6 as to plaintiff's second claim for equitable relief 29 U.S.C. §

7 1132(a)(3), and GRANTED as to plaintiff's third claim for breach

8 of fiduciary duty.[7]

9    Plaintiff has twenty days from the date this Order is

10 signed to file an amended complaint if she can do so consistent

11 with this Order.

12 Dated:  March 30, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

---

25 not consider defendants' arguments as to whether Blue Cross Idaho
acted in a "settlor" rather than a "fiduciary" function when
26 administering plaintiff's claim.

27    [7]    The court expresses no opinion as to how such claims
might be resolved in a further motion pursuant to <u>Kearney v.</u>
28 <u>Standard Ins. Co.</u>, 175 F.3d 1084 (9th Cir. 1999).